WaRdlaw, Ch.,
delivered the opinion of the Court.
Stephen Phillips, by voluntary deed, gave to his daughter, *548 Polly Phillips, afterwards Polly Templeton, “ and her future heirs of her body, two negro girls, Darkes and Sealeyto his daughter Flower Phillips a negro boy named Peter; to his daughter Elizabeth Nix a negro boy named Jeffree, and to his three daughters, above mentioned, a negro woman named Abigail ; and, after some provisions not now in question, proceeds to declare “ the above property is to my said daughters and the heirs of their body — now if either of the above named girls should die without any lawful heirs of their body, her property shall go to the surviving children, and so on.” Polly Temple-ton died in 1847, leaving her husband, Alexander Templeton, two children, the plaintiffs, and two grand-children, the issue of a deceased daughter, the defendants, who would be the distri-butees of her estate if she died intestate. The husband, Alexander Templeton, on 2d August, 1849, executed a deed,-whereby he released all his interest in the negroes, then twenty in number, given by the deed of Stephen Phillips to his daughter Polly, to the plaintiffs and defendants, in the proportions of one-third to each of the plaintiffs, and of one-third to the defendants to be equally divided between them. The bill prays partition of the negroes, according to the scheme of this last deed.
The Court of Appeals in Equity has decided, on the construction of the deed of Stephen Phillips, that the issue of Polly Templeton took as purchasers, after her life estate; and has referred to this Court the single question, whether the property shall be divided amongst said issue per stirpes or per capita.
It is well said by Lord Eldon, in Lady Lincoln vs. Pelham, (10 Ves. 175,) a case somewhat analagous to the present, that “ it is better to adhere to a settled construction than to come to a decision having a tendency to shake that which forms a rule of construction, and which may, in practice, have been acted upon in many cases.” Our first inquiry, then, should be, whether such words as are now in question have received a “ settled construction ” in this State. In the case of Campbell vs. Wiggins, (Rice’s Eq. 10,) in December, 1838, it was decided by three Chancellors against the opinion of the Chancellor on the circuit, that, under *549 a grant by Act of Assembly to the “ heirs at law of John Taylor and Blake Wiggins,” all who could bring themselves within the terms of the description were entitled to take per capita; and the general doctrine was announced that “ when the persons intended to take under a grant or devise are described as a class, without designating the proportions in which they are to take, all are equally entitled who can bring themselves within the description.” In Lemacks vs. Glover, (1 Rich. Eq. 141,) in January, 1845, where the limitation was to the “ heirs of the body ” of a tenant for life, the question as to the proportions in which the designated persons should take the estate, was referred to the ten Judges in the Court of Errors, but no authoritative decision was attained — five Judges, including one of the majority in Campbell vs. Wiggins, being of opinion that the distribution should be regulated by our Act of 1791, and five Judges being of opinion that the estate should be equally divided amongst all the objects of the gift. In Keitt vs. Houser, (M. S. May, 1846,) the Equity Court of Appeals decided according to the case of Campbell vs. Wiggins, but some stress seems to have been laid upon expressions introduced into the gift indicating equality of participation among the objects of bounty. In Rochell vs. Tompkins, (1 Strob. Eq. 114,) where an estate was limited, upon the death of a wife, without appointment and without living issue, to her right heirs, it was held,' that our statute of distributions should ascertain as well the persons who were to take, as the proportions in which they should take; and there the husband, as statutory heir, took one half of the estate, and the other distributees, who were numerous and in different degrees of relationship, took shares jure representation^ ; but, in that case, the question seems not to have been argued by counsel, nor considered by the Court. In Seabrook vs. Seabrook, (McM. Eq. 201,) the question underwent some discussion, but the case was determined upon principles not affecting the question. After this review of our cases on this subject, I think we may pronounce that, notwithstanding the doctrine of Campbell vs. Wiggins may have been the law of this State for about six years, it was greatly shaken by the case *550 of Lemacks vs. Glover, and that we have not any “ settled construction ” of such terms of description as are employed in the present case, forming a rule of property, and that we are at liberty to adopt any rule on the subject which we may suppose will best subserve the intention of donors and the policy of the State. . This conclusion is greatly confirmed by the consideration that our Act of 1791 is, and has long been, extensively known and highly approved by the people of this State; and that this legislative will, as it was called in the argument, has always had more influence in regulating testators and other grantors in the distribution of property than the rule of Campbell vs. Wiggins, which was little known, except to members of the profession, and could not have been acted upon in practice in many cases.
Whatever may be the doctrine of the English cases on this subject, the state of our law and of public policy justify the rule that whenever we are compelled by the terms of description, in a devise or grant, to resort to our statute of distributions for the purpose of ascertaining the objects of the gift, we must also resort to the statute to ascertain the proportions in which the donees shall take, unless the instrument making the gift indicates the intention of the donor that a different rule of distribution shall be pursued. In England, leaving out of view such exceptions as grow out of estates of gavelkind and coparcenary, &c., the heir is a single individual, designated by the common law, and when the term heirs is employed, it means persons who are to take successively as heir, and not persons who are entitled to an equal, or even a common participation; but our Act of 1791 is an Act of descents as well as distributions, and determines at once who shall be the heirs of the real estate of an intestate and the distributees of his personalty.
The term heirs is inapplicable to the succession to personal estate, and even as to real estate, we have no other heirs except the hceredes facti of our statute of distributions (Seabrook vs. Seabrook). As remarked by that eminent jurist, Chancellor HaRpeb,, in Lemacks vs. Glover, in an argument that has nca‘1 . *551 exhausted the subject: “ In England, when the term heirs or heirs of the body is taken to mean a class of persons, these cannot, in any manner or respect, take as heirs or heirs of the body. Whether construed children, issue or descendants, next of kin, &c., they must he always different persons from the heirs: not so with us.” In the case under consideration, the Court of Appeals in Equity could not have attained the conclusion that the “heirs of the body ” of the tenant for life took as purchasers, within the rules as to the remoteness of limitations, otherwise than by construing these terms to mean the descendants of the tenant for life living at the time of her death, or something equivalent. No one can take as heir of the body of another unless he fulfils the description, and is not only such a person as would take the real estate of that other under our Act of distributions, but likewise a lineal descendant. As we are obliged, then, to ascertain from the statute of distributions who are the heirs of the body, it is a logical consequence that we should look there also to ascertain their shares in the subject of gift. The statute is the exponent of the full meaning of the donor, unless he has declared a contrary intent, which is not pretended in the case before us. “ And this agrees with what the law supposes to be the rule of affection, by which children are preferred to grand-children and nearer kindred to the more remote.” (Per Harper, Ch. in Lemacks vs. Glover.) Certainly in all the cases on this point which have hitherto come before the Courts of South Carolina, the intention of the donors would have been more completely fulfilled by following the statute for the shares, and it is believed that such would he the result in a large majority of the instances that will occur in practice. A fertile mind may conceive cases of hardship from the operation of any general rule, but such hardship from the rule we are disposed to establish in this matter, may be avoided always by the careful expression of the whole intention of the testator. In Lady Lincoln vs. Pelham, where the gift was of “ one-fourth to the children of A. and one-fourth to or among the children of B.” ; and distribution per capita was directed, Lord Eldon said, " I am not sure that my decision does *552 not defeat the intention.” What was doubtful in that case, seems certain whenever there is a necessary reference to the statute to ascertain the donees. Most, if not all, of the English cases which hold that the distribution shall he per capita, where gifts are made to a class of persons, such as to children, grand-children, to A. and the children of B., to the next of kin of A., &c., (Northey vs. Strange, 1 P. Wms., 340; Blackler vs. Webb, 2 P. Wms., 383, are examples,) are not inconsistent with the rule we have adopted, for in them there is no necessary reference to the statute of distributions for any purpose. We do not go to the statute to discover who are children, next of kin, &c.; but we are obliged to look there to find out who are heirs of the body, descendants or relations entitled to take; and in the cases which actually occur, we commonly find them, not strictly a class, but individuals standing in various degrees of kindred to the intestate or first taker, and entitled to unequal shares of the estate.
It was strongly insisted, in the argument of this case, that wherever several persons take as purchasers under one gift, they must take per capita, and that no case can be found to the contrary. But where is the necessary connection between the ideas of purchase and equality ? Surely a testator might provide for unequal distribution among those taking by purchase; as by a gift to A. and the three children of B., so that A. should take one half, or by a gift to C. for life, and upon his death to his children then living, the eldest son of C. taking one half, however numerous such children may be. It is useless, however, to suppose cases, when examples may be found in the books. In 2 Jarm. 46, it is said: “ The statute of distributions not only determines the objects of a gift to ‘ relations,’ but also regulates the proportions in which they take, the gift being held to apply to the next of kin and the persons whom the statute admits by representation, the whole being taken per stirpes, not per capita ; that is, the property is distributable proportionably among the stocks, not equally among the several individual objects of every degree.”
In Roach vs. Hammond, (Pre. in Ch. 401,) on a gift by a testator of all his real and personal estate “for the use of his reía- *553 tions,” it -was determined that those who would he entitled to his personal estate under the statute of distributions, and those only, should come in, and that they should, take in the proportions prescribed by the statute ; and the Lord Chancellor said it had been often ruled accordingly in this Court. See also Masters vs. Hooper, (4 Bro. C. C. 207;) Devisme vs. Mellish, (5 Ves. 525.)
In Stamp vs. Cooke, (1 Cox, 234,) where testator directed the residue of his estate to be parted amongst his “ next relations, as sisters, nephews and nieces,” Sir Lloyd Kenyon, Master of the Rolls, held that distribution should be according to the statute, per stirpes. He said, “ the* statute is not to be adverted to, when testator has himself laid down a different rule, but has that been done ?”
In Rowland vs. Gorsuch, (2 Cox, 187,) SirL. Kenyon applied a similar rule to the words “descendants or representatives,” saying^, that no person, taking as representative, can take otherwise than as the statute gives it to representatives, i. e. per stirpes. See also Booth vs. Vickars, (1 Coll. 6;) Cotton vs. Cotton, (2 Bea. 67.)
It is now settled in England, that in a gift, “ next of kin” means nearest in kindred in degree, and implies no reference to the statute of distributions. Brandon vs. Brandon, (3 Swanst. 312 ;) Elmesley vs. Young, (2 Myl. & K. 780;) (8 Con. Eng. Ch. R. 227.) But the opinion prevailed there for a long timp, that next of kin meant such of the kindred as would be entitled to shares of an intestate’s estate, under the statute ; and while that opinion prevailed, the statute was also adverted to for the proportions of the distributees.- In the case of Stamp vs. Cooke, already cited, the Master of the Rolls said: If- the residue had been given to the next of kin, and the testator had stopped there, the statute would have been the rule to go by, and although nephews and nieces are not in fact so near as sisters, yet the fund would have been distributed per stirpes, according to the statute.” It is true, that in Phillips vs. Garth, (3 Bro. C. C. 64,) Mr. Justice Buller, sitting for the Lord Chancellor, determined *554 that, where a testator left his property to he equally divided amongst his next of km, the subject of the gift should he divided per capita among the surviving brothers, nephews and nieces of the testator. It appears, however, from the remarks of Sir John Leach, M. R., in Hinchley vs. Maclarens, 1 Myl. & K. 27; (6 Con. Eng. Ch. R. 480,) that when the case of Phillips vs. Garth came before Lord Thurlow, by way of appeal, his Lordship expressed doubt as to the propriety of the decision, and that the appeal was abandoned upon a compromise among the next of kin, by which the property was divided among them per stirpes, and not per capita — and that Mr. J. Buller’s decision was doubted by Lord Eldon, in Garrick vs. Lord Camden, (14 Ves. 385,) and disapproved by Sir Wm. Grant, in Smith vs. Campbell, (19 Ves. 403,) and the Master of the Rolls refers these doubts and disapproval to so much of the decision as directs distribution per capita.
In the case of Hinchley vs. Maclarens, above cited, the testator gave the bulk of his property to his daughter, but directed that if she died before attaining the age of twenty-one, his property should be equally divided amongst his next of kin. The testator left surviving him his daughter, one brother, and two nephews and a niece, the children of two deceased sisters. — - The daughter died under twenty-one, intestate and unmarried. Sir John Leach determined that where the words “ next of kin” were used simpliciter in a gift over, and without explanatory context, showing a different intention on the part of the testator, they must be taken to mean next of kin, ascording to the statute of distributions, and that the property must be divided, not per capita, but per stirpes.
Sir John Leach reiterated this opinion, upon a like state of facts, in Elmesley vs. Young, 2 Myl. & K. 82, (7 Con. Eng. Ch. R. 270,) but his opinion was overruled by Commissioners Shad-well and Bosanquet, upon appeal, on the ground, however, that there was no reference to the statute, for the meaning of the words “ next of kin,” 2 Myl. & K. 780, (8 Con. Eng. Ch. R. 227.)
It is the opinion of this Court that, by the principles of the *555 common law, by the reasoning of the English cases, and by our own law and policy, we are justified in establishing as a general rule, in cases like the one before us, that the partition shall be ;■per stirpes ; and it is so ordered and adjudged in this case.
O’Neall, Evans, Wardlaw, Frost, Withers and Whit-ner, JJ., and Dunkin, Ch., concurred.